UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| RETHA PIERCE STURDIVANT, | ) | Civil Action No.: 4:10-cv-3263-BHH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| ROBERT DALE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.    INTRODUCTION**

This action arises out of Plaintiff's arrest on December 25, 2007. Pursuant to 42 U.S.C. § 1983, Plaintiff alleges claims of false arrest, excessive force, and cruel and unusual punishment in violation of her rights under the Fourth and Fourteenth Amendments. She further alleges state law claims for malicious prosecution, abuse of process, defamation, and civil conspiracy. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 105). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(f), DSC. This Report and Recommendation is entered for review by the district judge.

**II.    FACTS**

On December 25, 2007, Defendant Robert Dale, an officer with the Horry County Police Department, observed Plaintiff "swerving all over the road from lane to lane, causing vehicles to swerve out of the vehicle's path to keep from being struck." See Arrest Report (Ex. 1 to Def.

Motion).¹ In Officer Dale's experience, this type of reckless driving often indicates that the person driving is intoxicated. See Dale Aff. ¶ 6. When Plaintiff stopped her van, she immediately got out of the car. See Arrest Video. She then leaned back into the car and appeared to be moving something around. Id. She then looked back at the police car, shut her door, and appeared to lock it. Id. Officer Dale averred that this behavior indicated to him that Plaintiff was probably hiding something in the van, and that this behavior, coupled with Plaintiff swerving on the road, often indicates that person is hiding either drugs or alcohol. See Dale Aff. ¶¶ 9-10. Officer Dale averred that his mindset during this traffic stop was that Plaintiff could be driving under the influence, carrying illegal drugs, or leaving the scene of some other crime. Id. at ¶ 11. When Officer Dale approached Plaintiff, he asked her why she was swerving all over the road. See Arrest Video. She responded that she did not mean to be swerving, and was just trying to get to a bathroom. Id. Officer Dale asked to see her driver's license, registration and proof of insurance. Id. Plaintiff turned toward the door of her van, and then turned back toward Officer Dale and began to walk past him, asking if she could use the restroom first. Id. Officer Dale responded that she was going to "stay right here," but Plaintiff continued walking, stating that she had to use the restroom. Id. Officer Dale repeated that she was going to "stay right here," pulled her by the arm back towards the van², and pinned her against the van. Id. He then handcuffed Plaintiff and placed her under arrest before escorting her to his patrol car. Id. He told her she could use the

---

¹In her response, Plaintiff asserts that Officer Dale's dash camera reveals that Plaintiff was not swerving. However, the video begins at the time Officer Dale is pulling Plaintiff over, and does not reveal what Officer Dale observed prior to turning on his blue lights to signal Plaintiff to pull over. See Arrest Video (Ex. 3 to Def. Motion).

²Officer Dale identifies this as "an authorized wrist lock on [Plaintiff's] left wrist." See Arrest Report.

bathroom when she got to the jail. Id. Although outside the view of the camera, Officer Dale can be heard telling Plaintiff numerous times to "stop resisting," "get in the car," and "put your feet in [the car]." Id. Plaintiff can be heard repeatedly stating that she has to use the bathroom. Id.

Officer Dale charged Plaintiff with reckless driving, failure to give proper signal, and resisting arrest. See Arrest Warrant for Resisting Arrest (Ex. 4 to Def. Motion); Traffic Tickets (Ex. 5 to Def. Motion). At the time of the arrest, Officer Dale did not know that Plaintiff was the Mayor of Atlantic Beach. Dale Aff. ¶ 16. A jury convicted Plaintiff of resisting arrest, and the South Carolina Court of Appeals upheld Plaintiff's conviction. See Sentencing Sheet (Ex. 6 to Def. Motion); Ct. App. Opinion (Ex. 7 to Def. Motion). Her tickets for reckless driving and failure to signal were dismissed by Officer Dale because Plaintiff had been arrested and later convicted of the resisting arrest charge. Dale Aff. ¶ 14.

### III.   STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere

scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

IV.   DISCUSSION

    A.   **42 U.S.C. § 1983**

Plaintiff brings this action in part pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433

(1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

### 1.     False Arrest

In her complaint, Plaintiff alleges that "Defendant did imprison and prosecute the Plaintiff maliciously and without probable cause."  Compl. ¶ 14.  Plaintiff entitles this cause of action "Violation of Fourth Amendment Prosecution."  However, both parties address false arrest rather than malicious prosecution.  The distinction between the two causes of action turns on whether the arrest at issue was warrantless or pursuant to a facially valid warrant.  See Dorn v. Town of Prosperity, 375 Fed.Appx. 284, 286 (4th Cir. 2010).   "'As a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution. An arrest warrant constitutes legal process, and it is the tort of malicious prosecution that permits damages for confinement pursuant to legal process. On the other hand, wrongful warrantless arrests typically resemble the tort of false arrest.'" Id. (quoting Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 4 (1st Cir.1995).  Here, Plaintiff was arrested without a warrant.[3]

---

[3] Defendant obtained a warrant against Plaintiff for the resisting arrest charge subsequent to the arrest.  Plaintiff could assert a separate, malicious prosecution claim against Defendant for the continued prosecution of his resisting arrest claim following the issuance of a warrant. See Heck v. Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.E.2d 383 (1994) (holding that a claim for false arrest permits for the recovery of damages "from the time of detention up until issuance of process or arraignment, but not more").  However, Plaintiff does not appear to be asserting any

Therefore, the proper claim is one for false arrest.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person .... in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Id. at 36. "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." Taylor v. Waters, 81 F.3d 429, 434 (4th Cir.1996). "Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir.1998) (internal citations omitted).

Defendant argues that Plaintiff's false arrest cause of action is barred by the doctrine espoused in Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.E.2d 383 (1994), because Plaintiff was convicted of resisting arrest, which was upheld on appeal. In Heck, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the

---

such claim, and furthermore, she asserts that her § 1983 claims with respect to her arrest arise out of the arrest for failing to use a turn signal and reckless driving, rather than her arrest for resisting arrest.

-6-

> conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus....

Id. at 486, 114 S.Ct. at 2372. "The complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. In footnote 6 of the Heck opinion, the Court specifically referenced a § 1983 action arising from an arrest for resisting arrest:

> An example of this latter category—a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful—would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest. (This is a common definition of that offense. See People v. Peacock, 68 N.Y.2d 675, 505 N.Y.S.2d 594, 496 N.E.2d 683 (1986); 4 C. Torcia, Wharton's Criminal Law § 593, p. 307 (14th ed. 1981).) He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, see n. 2, supra, the § 1983 action will not lie.

Id. at 486 n.6. Just as the Court references, to be guilty of resisting arrest in South Carolina, a person must first be subject to a lawful arrest. See State v. McGowan, 347 S.C. 618, 621, 557 S.E.2d 657, 659 (2001) ("[A] person may not be convicted of resisting arrest . . . where the underlying arrest [was] unlawful.").[4] Therefore, for Plaintiff to prevail on her § 1983 action for false arrest, she would have to negate an element of the offense for resisting arrest, that is, that

---

[4]Plaintiff notes that the language of the statute, S.C. Code Ann. § 16-9-320(A), does not specifically state that the underlying arrest must be lawful. However, the South Carolina Supreme Court has consistently interpreted the statute to require as much. See, e.g., McGowan, 347 S.C. at 621, 557 S.E.2d at 659; State v. Grate, 310 S.C. 240, 423 S.E.2d 119 (1992). State v. DeBerry, 250 S. C. 314, 320, 157 S. E. 2d 637, 640 (1967), cert. denied, 391 U. S. 953 (1968); State v. Jackson, 227 S. C. 271, 87 S. E. 2d 681 (1955); State v. Bethune, 112 S. C. 100, 104, 99 S. E. 753, 754 (1919); Hodge v. Piedmont & N. R. Co., 109 S. C. 62, 95 S. E. 138 (1918); State v. Shaw, 104 S. C. 359, 361, 89 S. E. 322, 322 (1915); State v. Wimbush, 9 S. C. 309, 316-17 (1878);

the arresting officer did not have probable cause to make the arrest.  See State v. Maybank, 352 S.C. 310, 318, 573 S.E.2d 851, 855 (Ct. App. 2002) ("To determine whether Maybank could have lawfully resisted arrest, this Court must consider whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing [Maybank] had committed or was committing an offense.") (internal quotes omitted).  Because Heck does not allow for this, summary judgment is appropriate on plaintiff's § 1983 claim for false arrest.

Plaintiff argues that her false arrest claim does not arise from the resisting arrest charge, but from the underlying charges for failing to use a turn signal and reckless driving. Nevertheless, the claim is still barred by Heck because, as discussed above, one of the elements of a resisting arrest charge is that the person was subject to a lawful arrest, meaning probable cause existed for an arrest prior to the person resisting.  A finding in this court that no probable cause existed for an arrest for reckless driving or failing to use a turn signal would negate an element of the resisting arrest conviction.[5]  Accordingly, as stated above, Plaintiff's false arrest claim fails, and summary judgment is appropriate.

---

[5] Furthermore, "probable cause need only exist as to any offense that could be charged under the circumstances." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3rd 1994); see also Wells v. Bonner, 45 F.3d 90, 95 (5th Cir.1995) ("If there was probable cause for any of the charges made ... then the arrest was supported by probable cause, and the claim for false arrest fails."). For fourth-amendment purposes, an arrest on multiple charges is a "single transaction," and probable cause will be found to exist, so long as it existed for at least one offense. See Calusinski v. Kruger, 24 F.3d 931 (7th Cir.1994) (holding that at the time of the arrest police officers need probable cause that a crime has been committed, not that the criminal defendant committed all of the crimes for which he or she is later charged.).

### 2. Excessive Force

Plaintiff also alleges pursuant to § 1983 that Officer Dale violated her 4th Amendment rights when he caused Plaintiff "to be restrained with unreasonable and excessive force." Compl. ¶ 17. Plaintiff alleges Officer Dale "grabbed the Plaintiff in a rude and offensive manner, and with great force and violence threw her against her car saying she wasn't going anywhere." Compl. ¶ 6.

Protection against force used during arrest is provided by the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). All claims of use of excessive force during an investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. Id. The test for excessive force in the arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The standard for measuring reasonableness of force is wholly objective. The objective reasonableness test requires careful attention to the circumstances of a particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting seizure or attempting to evade seizure by flight. Graham, 490 U.S. at 396; Foote v. Dunagan, 33 F.3d 445 (4th Cir.1994). "In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed," Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir.1996)), recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham, 490 U.S. at 396.

As set forth above, a jury found Plaintiff guilty of resisting arrest, which necessarily includes a finding that she was subject to a lawful arrest on underlying charges. When Plaintiff stopped her van after being pulled over by Officer Dale, she immediately got out of the car. See Arrest Video. She then leaned back into the car and appeared to be moving something around. Id. She looked back at the police car, shut her door, and appeared to lock it. Id. Officer Dale averred that this behavior indicated to him that Plaintiff was probably hiding something in the van, and that this behavior, coupled with his observation of Plaintiff swerving on the road, often indicates that person is hiding either drugs or alcohol. See Dale Aff. ¶¶ 9-10.

Officer Dale averred that if he had allowed Plaintiff to leave the scene, she could have gotten behind the wheel of another car and again posed a threat. Dale Aff. ¶ 13. Plaintiff attempted to leave Officer Dale's presence although he had asked to see her driver's license, registration and proof of insurance. See Arrest Video. Plaintiff turned toward the door of her van, and then turned back toward Officer Dale and began to walk past him, indicating that she was going to use the restroom rather than follow his instructions. Id. Officer Dale responded that she was going to "stay right here," but Plaintiff continued walking, stating that she had to use the restroom. Id. Even after Officer Dale handcuffed Plaintiff, he can be heard (outside the view of the camera) telling Plaintiff numerous times to "stop resisting," "get in the car," and "put your feet in [the car]." Id. Presented with the same facts, a jury found Plaintiff guilty of resisting arrest, which was upheld on appeal.

The force Officer Dale used to prevent Plaintiff from walking away included grabbing

Plaintiff's arm, pulling her back towards the van[6], and pinning her against the van while he handcuffed her. Id. Considering all of these facts in light of the objective reasonableness test, Plaintiff fails to present sufficient evidence to show that Officer Dale's use of force in restraining her from leaving the scene and then handcuffing her was unreasonable. The force used by Officer Dale was minimal, swift, and for the purpose of preventing Plaintiff from walking away from the scene. Courts have "long recognized that the right to make an arrest…necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 397. In addition, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Id. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. For these reasons, summary judgment is appropriate on Plaintiff's excessive force cause of action.

### 3.   Cruel and Unusual Punishment

Plaintiff's final claim under § 1983 is that Officer Dale subjected her to cruel and unusual punishment when he refused to allow her to use the restroom during the traffic stop and subsequent arrest. See Compl. ¶ 20. The language "cruel and unusual punishment" appears in the 8th Amendment. However, the 8th Amendment is appropriate only after a plaintiff has been convicted. Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987) (citations omitted). When a plaintiff claiming cruel and unusual punishment is a pretrial detainee, "the pertinent constitutional guarantee is the

---

[6]Officer Dale identifies this as "an authorized wrist lock on [Plaintiff's] left wrist." See Arrest Report.

Due Process Clause of the Fourteenth Amendment." Id. Under this standard, "the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to any form of 'punishment.'" Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) (citations omitted). However, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." Id. To establish a constitutionally impermissible punishment, "the pretrial detainee must show either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." Id. First, Plaintiff fails to present sufficient evidence to show that Officer Dale refused to allow Plaintiff to use the restroom with an expressed intent to punish. Officer Dale told Plaintiff she could use the restroom when she arrived at the jail. See Arrest Video. Following the arrest, Officer Dale had to wait on a wrecker to arrive to pick up Plaintiff's van. Id. Once the wrecker arrived, Officer Dale drove Plaintiff to the jail. Id. The total time from the traffic stop to arriving at the jail was approximately thirty-four minutes, which is all included on the arrest video. Id. There is no indication of any intent on the part of Officer Dale to punish Plaintiff.

Furthermore, Officer Dale had a nonpunitive governmental objective in requiring Plaintiff to wait until she arrived at the jail to use the restroom. Officer Dale has produced the affidavit of Melvin Tucker[7], whom he retained as an expert, and who offers several reasons why officers should not escort arrestees to their home, a gas station, or a hotel to use the restroom during an

---

[7] Melvin Tucker retired as the Chief of Police for the City of Tallahassee, Florida in 1994. During his twenty-five year law enforcement career, he served as Chief of Police in four cities and as an agent for the Federal Bureau of Investigations. Tucker Expert Report p. 1 (Ex. to Def. Motion). He has also served as an adjunct faculty member in criminal justice at various community colleges and universities. Id. He has served as a law enforcement and security trainer and holds several law enforcement certificates in addition to his bachelor's and master's degrees. Id.

investigatory stop or other type of detention. First, given the opportunity to go to the bathroom, arrestees could flush drugs or other illegal contraband down the toilet. Tucker Aff. ¶ 10 (Ex. to Def. Motion). Arrestees could hide larger items such as guns or other weapons in the bathroom or erase incriminating text messages or images on their cell phone. Id. If they are suspected of being under the influence, they could induce vomiting to alter their blood alcohol level. Id. In short, allowing arrestees to use the bathroom prior to being taken to jail gives arrestees the opportunity to destroy or hide evidence of criminal activity. Id. Tucker also avers that the officer would have to accompany the arrestee to the private restroom, which puts the officer's safety at risk. Tucker Aff. ¶ 11. The arrestee could obtain a weapon in the restroom, or he could have friends waiting to attack the officer. Id. The arrestee could call friends while he is in the restroom. Id. Maintaining officer safety is a legitimate, nonpunitive governmental objective. See, e.g., Robles v. Prince George's County, Maryland, 302 F.2d 262, 269 (4th Cir. 2002). Plaintiff has failed to present sufficient evidence to survive the motion for summary judgment on his cruel and unusual punishment cause of action.

    **B.**     **State Law Claims**

Plaintiff also alleges state law claims for malicious prosecution, abuse of process, defamation, and civil conspiracy. However, if the district judge accepts this report and recommendation, the original federal jurisdiction claim will be dismissed and the only remaining claim will be Plaintiff's state law claims. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain

-14-

jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law claims.

**IV.     CONCLUSION**

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 105) be granted with respect to the federal causes of action, that the court decline to exercise supplemental jurisdiction over the state law causes of action, and this case be dismissed in its entirety.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

May 31, 2016
Florence, South Carolina

**The parties are directed to the important information on the following page.**